IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM E. MATHEWS, JR.,

    Plaintiff,

v.                                          Civil Action No. PX 16-4013

JOHNS HOPKINS HEALTH SYSTEM,
CORP. and SUBURBAN HOSPITAL, INC.,

    Defendants.

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending in this employment discrimination case is a partial motion to dismiss filed by Defendants Johns Hopkins Health System, Corp. ("Johns Hopkins") and Suburban Hospital, Inc. ("Suburban") (collectively, "Defendants"). ECF No. 5. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the motion is granted.

**I.    BACKGROUND**[1]

Plaintiff William E. Mathews, Jr. ("Mathews") was employed by Suburban for over twenty years, serving the last eleven years as a manager in the Maintenance Department. ECF No. 1 at 2–4. In April of 2009, Johns Hopkins acquired Suburban and, according to Mathews, "became the ultimate decision maker regarding the affairs of Suburban Hospital." *Id.* at 3.

On December 21, 2015, two Maintenance Department staff members brought to Mathews' attention documents that had been printed by another employee in the Department. *Id.*

---

[1] These facts are derived from Plaintiff's Complaint and are accepted as true for purposes of assessing the sufficiency of his claim.

at 4. The documents related to hate groups, extremist groups, and terrorism. *Id.* Pursuant to Suburban's Code of Conduct, Mathews brought this information to the attention of Suburban's Vice President of Operations who then met with Mathews' supervisor. *Id.* at 4–5.

On December 23, 2015, Mathews' supervisor informed him that two investigators from Johns Hopkins had taken the employee to a conference room to discuss the matter. *Id.* at 5. The supervisor also informed Matthews that Suburban would likely turn over the investigation to the Federal Bureau of Investigations. *Id.* The employee was removed from the premises that day, and then the Johns Hopkins investigators turned their attention to Mathews. *Id.* at 6. The investigators, as well as Suburban's Vice President of Human Resources, met with Mathews and questioned his motives for reporting the employee. *Id.* They suspected that Mathews used the incident as an excuse to facilitate the employee's termination, who was no stranger to disciplinary action. *Id.*

The next day, December 24, 2015, Mathews began his winter vacation. *Id.* at 7. Upon returning to work on January 4, 2016, Mathews was summoned to a meeting with Wayne Stockbridge, Suburban's Director of Human Resources, and Jackie Schultz, then-acting CEO and Vice President of Nursing for Suburban. *Id.* At this meeting, Stockbridge terminated the then 61-year-old Mathews without explanation and absent any prior disciplinary action taken against him, which ran counter to Suburban's graduated disciplinary system. *Id.* at 7–8. Suburban then filled Mathews' position with a "younger and less costly" employee. *Id.* at 9–10.

Matthews alleges that "[b]ased upon [his] best information and belief, Defendants formed an alliance and cooperated in the disparate treatment that resulted" in his termination. *Id.* at 10. Mathews further alleges that his termination is one of a series of age-based terminations that have occurred since Johns Hopkins' acquired Suburban. *Id.* at 9–10. Consequently, Mathews

filed a complaint with the Equal Employment Opportunity Commission. On September 19, 2016, Matthews received his right to sue letter as to Suburban, and on October 26, 2016, he received his right-to-sue letter as to Johns Hopkins. *Id.* at 3.

On December 16, 2016, Mathews filed in this Court a three-count complaint against the Defendants. ECF No. 1. In Count I, Mathews alleges that the Defendants subjected him to disparate treatment and terminated his employment because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* In Count II, Mathews alleges that Suburban and Johns Hopkins conspired to violate the ADEA. In Count III, Mathews alleges that the Defendants violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, by unlawfully terminating him five years prior to his retirement pension vesting. On March 2, 2017, Defendants filed a partial motion to dismiss arguing that Count II fails to allege a viable conspiracy claim. ECF No. 5.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. ANALYSIS

In Count II, Mathews alleges that Suburban and Johns Hopkins conspired to violate the ADEA in that they "formed an alliance or understanding to speak as one regarding the discipline of Mr. Mathews." ECF No. 1 at 12. At the outset, it bears noting that Mathews' claim, as pleaded, is not actionable. Count II is titled "conspiracy to violate the ADEA." *Id.* The ADEA, however, does not include a cause of action for conspiring to discriminate against an employee on account of age. *Compare* 29 U.S.C. § 623, *with* 42 U.S.C. § 1985(3) (prohibiting, *inter alia*, "two or more persons . . . [from] conspir[ing] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws"). *See also White v. Lincoln Plating Co.*, 955 F. Supp. 98, 100 (D. Colo. 1997) ("The ADEA contains no provisions

concerning conspiracies." (citing *McCann v. Texas City Ref., Inc.*, 984 F.2d 667, 674 n.7 (5th Cir. 1993))). Accordingly, the only way to give effect to Mathews' claimed cause of action is to construe it as one brought pursuant to the general conspiracy statute, 42 U.S.C. § 1985(3), to violate the ADEA.

Defendants argue that Mathews' conspiracy claim brought via 42 U.S.C. § 1985(3) fails as a matter of law because the ADEA is the exclusive statutory vehicle by which to bring age-discrimination claims.[2] Defendants are correct. In *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit held that the ADEA provides a singular avenue for asserting age-based discrimination claims. *Id.* The Fourth Circuit explained that Congress created a comprehensive statutory scheme when it enacted the ADEA, which is "structured to facilitate and encourage compliance through an informal process of conciliation and mediation." *Id.* at 1366. "If a violation of substantive rights under the ADEA could be asserted by way of a § 1983 action," the Fourth Circuit opined, the aggrieved party could bypass this comprehensive remedial scheme, thereby thwarting the ADEA's purpose. *Id.* at 1367.

This Court has interpreted *Zombro*'s holding to apply with equal force to ADEA claims brought pursuant to §1985(3) and for good reason. Section 1985(3) is closely analogous to § 1983 in that both provide a cause of action against state actors for violations of federal statutes or constitutional rights. *Causey v. Balog*, 929 F. Supp. 900, 912 n.8 (D. Md. 1996); *Taylor v. Brown*, 928 F. Supp. 568, 573 n.1 (D. Md. 1995) ("The breadth of the *Zombro* analysis,

---

[2] Defendants also argue that Mathews' conspiracy claim should be dismissed based on the intra-corporate conspiracy doctrine first recognized in *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). Simply put, the doctrine stands for the proposition that a corporation cannot conspire with itself. However, whether two entities are functionally the same to satisfy the intra-corporate conspiracy doctrine is a fact-intensive inquiry, making it particularly inappropriate for resolution at the motion to dismiss stage. *See, e.g., Ins. Co. of N. Am. v. Sec. Mgmt. Corp.*, 72 F.3d 127 (4th Cir. 1995) ("[T]he critical inquiry in determining whether one corporation is a subsidiary of another under Maryland law—absent any particular definition set by the parties or the General Assembly—turns on the ownership of a majority of the putative subsidiary's shares.").

moreover, clearly indicates that a plaintiff is just as unable to circumvent the ADEA by using § 1985(3) as he is unable to do so using § 1983."). Accordingly, applying *Zombro* to the instant case compels dismissal of Count II.

Mathews counters that he is bringing a "civil conspiracy" claim, which suggests that he is attempting to rely on Maryland common law and not 42 U.S.C. § 1985(3). *See* ECF No. 6 at 2. Even if Count II is read as Matthews now urges, the claim fails for the same reason. Although the Fourth Circuit has yet to address this issue directly, other courts have dismissed state-law civil conspiracy claims, applying the rationale of *Zombro*. To hold otherwise would "permit plaintiffs to make an 'end run' around" the ADEA, which provides a comprehensive "statutory structure for age discrimination suits." *Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342–43 (11th Cir. 1999) (holding that the "enforcement of rights secured through the ADEA must be pursued in the manner specified in the ADEA, not through alternative state-law mechanisms"); *see also Fairfax v. Sch. Dist. of Philadelphia*, No. 03-4777, 2004 WL 887416, at *5 (E.D. Pa. Apr. 26, 2004) (dismissing plaintiff's claims of state civil conspiracy founded upon an ADEA violation); *Bennett v. Indep. Blue Cross*, No. 92-4249, 1993 WL 65812, at *2 (E.D. Pa. Mar. 12, 1993) (granting summary judgment against plaintiff's civil conspiracy claim based on ADEA violation). Accordingly, Count II must be dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss Count II is granted. A separate Order follows.

| 7/13/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |